**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William Francis BROWN,**
**Defendant–Appellant.**

**No. 91–1821.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 18, 1991.
Decided April 8, 1992.

Sharon Jackson, Asst. U.S. Atty., Office of U.S. Atty., Indianapolis, Ind., argued, for plaintiff-appellee.

Alex R. Murphy, Indianapolis, Ind., argued, for defendant-appellant.

Before COFFEY, EASTERBROOK and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Defendant Brown appeals his sentence alleging that the trial court erred in designating him as a career offender under Section 4B1.1 of the Sentencing Guidelines.[1] We affirm.

## I. FACTS AND DISTRICT COURT DISPOSITION

On August 27, 1990, while on a weekend pass, the defendant escaped from the Madison County Jail Work Release Center, approximately 10 days prior to release on parole for two armed robbery convictions. Shortly thereafter, the defendant committed armed robbery of the Lake City Bank in Wabash, Indiana. According to the sentencing transcript, the defendant entered the Lake City Bank on September 11, 1990 at approximately 1:00 p.m., brandished a handgun, robbed two tellers of $6,434.00 (including $100.00 in "bait bills"), and announced "My name is Frankie Brown. I just got out of Leavenworth. Tell the FBI I am back." The defendant was arrested that same day in Indianapolis, Indiana on

the outstanding federal escape warrant, after a search initiated by the Lake City Bank robbery.

An Information charging the defendant with escape, in violation of 18 U.S.C. § 751(a), was filed in the Southern District of Indiana on October 1, 1990. The defendant waived prosecution by indictment of the escape charge and consented to a transfer, pursuant to Rule 20 of the Federal Rules of Criminal Procedure, of a superseding indictment issued by a federal grand jury in the Northern District of Indiana to the Southern District for purposes of a guilty plea. Count I of the superseding indictment charged the defendant with armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d). Count II charged the defendant with use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1). Count III charged the defendant with being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and § 924(a)(2).

At the March 29, 1991 guilty plea and sentencing hearing, the fifty-three-year-old defendant admitted his guilt but objected to his classification as a career offender, arguing that his 1978 and 1979 bank robbery convictions were part of a common scheme or plan and were therefore merged into a single offense for criminal history purposes. The defendant based his argument on Sentencing Guideline § 4A1.2, which directs that sentences imposed in related cases be treated as one sentence in the calculation of criminal history[2] and on Application Note 3 of § 4A1.2, which states that cases are considered related if they

---

1. § 4B1.1. *Career Offender*
   A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense ... A career offender's criminal history category in every case shall be Category VI.

2. § 4A1.2. Definitions and Instructions for Computing Criminal History

   (a) Prior Sentence Defined

   \*     \*     \*     \*     \*     \*

   (2) Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history. Use the longest sentence of imprisonment if concurrent sentences were imposed and the aggregate sentence of imprisonment imposed in the case of consecutive sentences.

were part of a single common scheme or plan.[3]

According to the presentence report, the defendant robbed the Home Federal Savings and Loan in Austin, Indiana on July 31, 1978 and robbed the United Bank in Jonesboro, Indiana on August 8, 1978. The defendant was convicted and sentenced to twenty-three years imprisonment for the Jonesboro robbery in the Northern District of Indiana on December 19, 1978. Upon his conviction for the Austin robbery, the United States District Court for the Southern District of Indiana imposed a twelve-year concurrent sentence on January 8, 1979. To show that the two 1978 robberies were part of one plan, the defendant testified at the sentencing hearing that his 1990 robbery of the Lake City Bank was motivated by his desire to "revert back to '78" and rob a series of three banks on consecutive Tuesdays at noon to gain $50,000.

The presentence report's computation of the defendant's offense level for the 1990 escape and robbery-related charges placed the defendant's offense at a combined adjusted offense level of 23, which was then reduced by two levels for acceptance of responsibility pursuant to Guideline § 3E1.1(a), to a total offense level of 21.[4] The presentence report then factored in the defendant's career offender status under the criminal history provisions, again reduced the offense level by two for acceptance of responsibility, and finally placed the offense at a total level of 32.

While under Guideline § 4A1.2(e) only those felonies committed within fifteen years of the instant offense contribute to career offender status, the defendant's criminal history recites a litany of criminal activities which begin at age eleven and continue for forty-one of the defendant's fifty-three years.[5] As a juvenile, the defendant was committed to the Indiana Boys School based on several delinquency charges, and escaped from that institution on at least five separate occasions. At age sixteen, the defendant was convicted of vehicle taking and was confined to the Indiana State Reformatory. After stabbing another inmate, the defendant was transferred to the Indiana State Prison to serve the remainder of his sentence. Within ten months of his release, in September of 1964, the defendant was convicted of assault and battery with intent to commit a felony after robbing a gas station. Due to poor institutional adjustment, he was again transferred from the Indiana State Reformatory to the Indiana State Prison. While on escape status from the prison, the defendant became involved in the interstate transportation of a stolen motor vehicle. That conviction led to another term of imprisonment, which finally resulted in release in October 1977. One month later, the defendant was arrested for assault and battery with bodily injury. After entering a guilty plea to the charge on April 28, 1978, the defendant was given credit for jail time served and was released from custody. Approximately three months later, the defendant committed the first of the two 1978 armed robberies at issue here in the calculation of career history.

The government argued, as it argues here, that two different bank robberies in

3. *Commentary Application Notes:*

* * * * * *

   3. Related Cases: Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing. The court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public ...

4. § 3E1.1 *Acceptance of Responsibility*
   (a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.

5. § 4A1.2 *Definitions and Instructions for Computing Criminal History*

* * * * * *

   (e) *Applicable Time Period*
   (1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

two districts on two occasions subject to separate prosecution and sentencing do not a related conviction make. The district court, agreeing with the government's argument, concluded that the two 1978 robberies were separate episodes and separate offenses—each having a distinct beginning, middle, and end. The district court further cautioned that the defendant's reasoning could logically conclude in an argument that a life of crime was pursuant to one grand plan, stating:

> If I were to accept your characterization of what occurred, it's conceivable a defendant could have one giant scheme or plan in which he would include many crimes over a long period of time, perpetrated in many districts in many ways, and when you apply that approach and you exaggerate it, not beyond reason, but you exaggerate it to its logical conclusion, you can begin to see the fallacy in the approach. A defendant could always come in and say, 'My life of crime has been pursuant to one giant plan that I developed when I was fourteen years old,' ...

Based on the determination that the 1978 armed robberies were unrelated, the district court sentenced the defendant as a career offender to a term of 240 months, on the armed bank robbery conviction (Count I), concurrent with 120 months imposed on the felon in possession of a firearm conviction (Count III), and a mandatory 60 months on the use of a firearm in commission of a felony conviction (Count II), to be served consecutively to the sentences imposed in Counts I and III. On the escape conviction, the defendant was sentenced to 60 months, imposed concurrently with the sentences imposed on the other charges. The district court found the 240-month sentence on the bank robbery charge to be appropriate as it fell midway in the applicable Guideline range. In addition to a total sentence of 300 months, the defendant was ordered to pay $218.00 in restitution and $200 for the special assessment. The defendant's period of incarceration is to be followed by a three-year period of supervised release.

## II. ISSUE FOR REVIEW

In appealing his sentence under the career offender provisions of the Sentencing Guidelines, the defendant asserts that the district court erred in its determination that the defendant's 1978 and 1979 bank robbery convictions were separate and distinct offenses, not part of a single common scheme or plan.

## III. DISCUSSION

### A. Relatedness Resulting From a Common Scheme or Plan

The parties agree that the defendant meets all the criteria, save one, for classification as a career offender. The defendant was most certainly at least eighteen years old at the time of the instant offense—he was, in fact, fifty-two years old. The instant offense's conviction is a felony that is a crime of violence—armed bank robbery. The sole issue on appeal revolves around the circumstances of the defendant's two prior robbery convictions and whether the relationship between those two crimes requires treatment as a single conviction under the Guidelines.

The defendant claims that the 1978 bank robberies, which occurred eight days apart in adjacent federal jurisdictions, were part of an overall scheme which resulted in concurrent sentences. To support that proposition, the defendant testified at the sentencing hearing in March 1991 that he had a plan to rob three banks on consecutive Tuesdays to obtain $50,000.[6]

The defendant relies almost entirely on two cases outside our circuit to bolster his common scheme argument. Neither provide the level of support required to render his argument persuasive. The defendant correctly observes that *United States v. Rivers*, 733 F.Supp. 1003 (D.Md.1990), *vacated* 929 F.2d 136 (4th Cir.1991), presents a "strikingly similar fact situation," however the district court's findings and con-

---

**6.** We note that July 31, 1978 was a Monday and August 8, 1978 was a Tuesday.

clusions, upon which the defendant's relies, were found to be clearly erroneous and the decision was overturned on appeal. The appellate court emphasized that the common plan conclusion by the district court would have the "effect of making related offenses of almost all crimes committed by one individual. The fact that both offenses were committed to support one drug habit does not make the offenses related under section 4A1.2." *Id.* at 140. The Fourth Circuit determined that the bank robberies—committed in different jurisdictions, on different dates, adjudicated and sentenced separately—were unrelated offenses meriting Rivers' sentencing as a career offender as a matter of law. *Id.* at 141.

The defendant also directs us to *United States v. Houser,* 929 F.2d 1369 (9th Cir. 1991) as authority for his common scheme argument. *Houser* involved two drug convictions in two counties which resulted from a single undercover investigation of drug sales to one government agent. The testimony at the sentencing hearing clearly revealed that Houser was charged with two offenses solely because the sales occurred in different counties:

> Had both sales occurred in the same county, he would have been tried for both transactions together. Thus Houser was charged and convicted of two offenses merely because of geography and not because of the nature of the offenses.

*Id.* at 1374. The Ninth Circuit, which employs a *de novo* review of the application of the career offender sentence under the Guidelines, found that significant evidence supporting the single plan theory existed and that the sentencing court did not have before it any contradictory evidence. On that basis, the appellate court determined that the district court erred in not treating the two drug sales as related. To the contrary, the defendant in our case cannot claim that his 1978 and 1979 bank robbery convictions were a mere accident of geography—or that they resulted from a single investigation—or that they involved a single victim—or that the record is devoid of evidence contradicting a single plan theory.

■ The relatedness determination has lately been the subject of review in a number of circuits. These decisions support the government's response to the defendant's argument—a relatedness finding requires more than mere similarity of crimes. A common criminal motive or *modus operandi* will not cause separate crimes to be related within the meaning of the Guidelines commentary. *United States v. Lowe,* 930 F.2d 645 (8th Cir.1991); *United States v. Davis,* 922 F.2d 1385 (9th Cir.1991). Nor will crimes be deemed related simply because they are committed to achieve a singular objective—such as support of a drug habit or debt collection. *United States v. Kinney,* 915 F.2d 1471 (10th Cir.1990); *United States v. Veteto,* 920 F.2d 823 (11th Cir.1991).

We have also recently had occasion to examine the relatedness determination in the application of career offender status. We are mindful that the purpose of the "related" test is identification of the less dangerous criminal. *United States v. Wali Ali,* 951 F.2d 827, 828 (7th Cir.1992). We reject the notion that the relatedness determination may be manipulated to protect a repeat offender from the deserved application of the career offender provisions. *United States v. Elmendorf,* 945 F.2d 989 (7th Cir.1991). In *Elmendorf,* we refused to permit a six bank robbery crime spree, consolidated for testimonial and convenience purposes, to be transformed into a single conviction, stating:

> The facts involved in the previous six armed and unarmed robbery convictions pursuant to the plea agreement may never again be the subject of a criminal charge and to confine these six separate, specific and distinct bank robbery convictions to a characterization as a single general crime conviction gives the defendant a bargain basement wholesale deal and severely undermines the criminal justice system's ability to protect society and penalize the defendant for his criminal conduct. Such a result would defeat Congress' objective in enacting the Sentencing Reform Act of 1984 of 'enhanc[ing] the ability of the criminal jus-

tice system to combat crime through an effective, fair sentencing system.' U.S.S.G. Ch. 1, Pt. A, intro 3.

*Id.* at 998.

The defendant's 1978 and 1979 robbery convictions are not related under the common scheme or plan analysis. The defendant was convicted and sentenced in two jurisdictions by two judges on two occasions for two robberies of two banks in different federal districts on two separate days. The only evidence offered to support this theory is the defendant's testimony that he had a plan. That testimony did not persuade the district court to find the existence of a common scheme or plan and that testimony is certainly not sufficiently compelling to cause us to disturb the district court's determination.

■ In addition to the defendant's common scheme requiring singular treatment claim, he argues for the first time on appeal that the two prior concurrent terms of imprisonment for the 1978 robberies were, in effect, consolidated sentences. *See* Application Note 3 to § 4A1.2. While we need not even address this claim as there is no decision of the district court to review, we take the opportunity to once again point out that a desire for a consolidated sentence will not convert concurrent sentences into consolidated status. *United States v. Wildes*, 910 F.2d 1484, 1487 (7th Cir.1990). Concurrent sentencing does not create related underlying offenses and we reject any attempt to expand the already broad advisory commentary.[7] The "effectively consolidated" argument has also recently been held to be one without merit by the Second Circuit which observed that an "inquiry into whether consolidation would have occurred is too speculative to be an ingredient of a guideline system that should promote certainty of results." *United States v. Connor*, 947 F.2d 1018, 1020 (2d Cir.1991) (quoting *United States v. Chartier*, 933 F.2d 111, 116 (2d Cir. 1991)).

■ This court has held that a district judge is in the best position to apply legal rules to the underlying facts and thus we review that decision deferentially. *Wildes*, 910 F.2d at 1486. The determination of whether particular offenses are part of a common scheme or plan is often a fact-intensive undertaking. After hearing the defendant's testimony—evidence of the purported "1978 three-bank plan"—the district court judge found that the two robberies were separate and distinct episodes, and sentenced the defendant as a career offender. The district court's finding of fact must be accepted upon appellate review, absent clear error, and the district court's application of Guidelines to those facts is given due deference. 18 U.S.C. § 3742(e); *United States v. Franklin*, 896 F.2d 1063 (7th Cir.1990). While it is true this circuit has not yet determined the standard of appellate review of a decision applying a provision of the Sentencing Guidelines to uncontested facts, we need not address that issue as the district court's decision in this case survives even *de novo* review. *Wali Ali*, 951 F.2d at 828; *cf. United States v. Connor*, 950 F.2d 1267, 1270 (7th Cir.1991) (while we review district court's application of guidelines under due deference standard, a close review of a claim that prior convictions are related seems appropriate). The defendant is a career criminal and was properly sentenced under the federal Sentencing Guidelines.

## IV. CONCLUSION

The sentence imposed is AFFIRMED.

---

**7.** Even consolidated cases are not necessarily related for purposes of the career offender determination. *Elmendorf*, 945 F.2d at 998. Emphasizing the advisory and not binding nature of the application notes, we approved of the district court's separation of six unrelated robberies which had been consolidated purely for testimonial and convenience purposes. *Id.*