In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2738

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DENNIS BROWN,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 372--George M. Marovich, Judge.


Submitted December 14, 1999--Decided April 7, 2000


  Before ESCHBACH, COFFEY and RIPPLE, Circuit Judges.

  COFFEY, Circuit Judge.  Defendant-Appellant
Dennis Brown ("Brown") received a 125-month term
of imprisonment after pleading guilty to bank
robbery by force or violence, in violation of 18
U.S.C. sec. 2113(a). On direct appeal, Brown
challenges the district court's computation of
his criminal history score, maintaining that his
four previous aggravated and armed robbery state
convictions/1 should have been treated as one
offense because they formed as part of a common
scheme or plan and therefore were related under
U.S.S.G. sec. 4A1.2(a)(2). We AFFIRM.
I.  BACKGROUND

  For approximately 6 weeks in March and April of
1998, Brown was engaged in a crime spree that
consisted of five robbery offenses, occurring on
March 23, April 16, April 30, May 1 and May 9,
1998. Four of these robberies (March 23, April
16, April 30, and May 9) resulted in three
Illinois indictments for aggravated robbery and
one Illinois indictment for armed robbery, all of
which Brown pled guilty to in the Illinois court
system. The fifth robbery, occurring on May 1,
1998, resulted in a federal charge resulting from
a grand jury indictment on December 15, 1998,
charging Brown with bank robbery by force or
violence in violation of 18 U.S.C. sec. 2113(a).

A.  Prior State Robbery Convictions

1.   March 23, 1998 & April 16, 1998 Robberies

   Brown's crime spree began on March 23, 1998, when, according to an arrest report of the Harwood Heights, Illinois police department, he entered the "Genesis Two Hands Down" store and directed the employee to give him all the money from the drawer. Brown then ordered the employee to come to the front of the store and kneel down as he exited. Apparently impressed with his success, Brown struck again on April 16, 1998, when he robbed the Harwood Heights "Life Uniform" store. The arrest report indicates that the defendant entered the store, asked the employee if she was alone, and she replied in the affirmative. He then asked how much money was in the register and displayed a handgun in the waistband of his pants. After the employee handed over the currency in the drawer, he ordered her to get down on the floor as he exited the store./2


2.   April 30, 1998 Robbery

   Apparently believing that his luck would never end, on April 30, 1998, the defendant held up another location. According to a Morton Grove, Illinois police report, the defendant entered a Shell Station Mini-Mart and ordered one of the employees to open the register. When the employee asked if he was kidding, Brown lifted his shirt and displayed a steel revolver in the waistline of his pants. The employee then opened the register and placed the cash drawer on the counter. Brown took the money from the drawer and told the employee to lie down on the floor for five minutes and if he got up, he would be shot by his accomplice who was watching./3


3.   May 9, 1998 Robbery

   Proving the old proverb that all "good" things must come to an end, Brown's final act of his crime spree occurred on May 9, 1998, when he entered the "WorldWide Liquor" store at 3500 N. Harlem, Chicago, walked to the counter and demanded money while lifting his shirt and displaying a handgun tucked in his belt. According to the Chicago police arrest report, the employee complied and gave Brown $150. Brown then ordered the employee to lie down on the floor and fled the scene./4

B.   The Federal Armed Bank Robbery Conviction

   Brown went for the jackpot on May 1, 1998, when he entered the Lombard, Illinois branch of the

LaSalle Bank, lifted his shirt, displayed the butt end of a revolver and shouted, "I've got a gun and a grenade in my pocket, my partner just gave me the signal, he's got a police scanner in the car, so don't set off any alarms or I'll pull the pin on this and we'll all die." Brown then handed a bag to a bank employee and told the employee to go to the teller counter and have it filled. The defendant continued to terrorize the bank employees and patrons by threatening, "Don't make any mistakes, I don't want any strapped money or I'll pull the pin," and also warned that if anyone called for help, he would come back in, "pull the pin, and we'll all explode." The LaSalle Bank's records reflected that the bank was out $9,248 as a result of the armed bank robbery.

Approximately two weeks later, on May 14, 1998, the Lombard Police Department was advised that an individual recently arrested by the Chicago Police Department for aggravated robbery had signed a written confession in which he admitted to robbing the Lombard, Illinois branch of the LaSalle Bank./5 The following day, Brown was identified in a photo lineup by two eyewitnesses as the individual who robbed the LaSalle Bank on May 1, 1998./6

On December 15, 1998, Brown was indicted on one-count of bank robbery by force or violence, and on January 27, 1999, pled guilty and his plea was accepted. The Presentence Investigation Report ("PSR") recommended that Brown receive a total of thirteen criminal history points, including ten points for his four previously discussed state convictions for aggravated and armed robbery./7 The sentencing judge adopted the recommendation of the PSR and made the following findings with respect to his prior state robbery convictions: the court found that the April 16 robbery was "related" to the March 23 robbery under Application note 3 to U.S.S.G. sec. 4A1.2(a)(2) because the two offenses had been "consolidated for the purposes of sentencing" by the state court, thus resulting in the allocation of just one criminal history point under sec. 4A1.1(f) for the April 16 robbery,/8 but counted the March 23, April 30, and May 9 robberies separately and allocated three criminal history points for each offense under U.S.S.G. sec. 4A1.1(a), resulting in nine criminal history points.

Before sentencing, Brown filed objections to the PSR, contending that all four state robbery convictions were related under sec. 4A1.2(a)(2) as part of a common scheme or plan and thus should have been counted only once in the criminal history computation. The sentencing

judge rejected his challenge and sentenced him to 125 months imprisonment to run concurrently with his state sentences. Brown appeals.

## II.   DISCUSSION

This Circuit has recently clarified the applicable standard of review, holding that a district court's determination that certain prior sentences are not related is a factual one, and that we review under the clear error standard. See United States v. Buford, 201 F.3d 937, 940-42 (7th Cir. 2000); United States v. Joy, 192 F.3d 761, 770 (7th Cir. 1999). For purposes of calculating a defendant's criminal history, under sec. 4A1.2(a)(2), prior sentences imposed in "unrelated" cases are counted separately, but prior sentences imposed in "related" cases are counted as one sentence. Application note 3 to sec. 4A1.2(a)(2) offers this advice:

Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

U.S.S.G. sec. 4A1.2, cmt. (n.3) (emphasis added). Brown relies on this application note in arguing that his four robberies are all related under the common scheme or plan prong because they involved a similar modus operandi and were connected by a common purpose. Specifically, the defendant contends that he was "strung out" on drugs each time, displayed a gun during two of the robberies, and during each incident, demanded currency, took the money, ordered the victims onto the floor and exited the scene, all with the "common purpose" of obtaining money to feed his drug addiction. Before we address the defendant's arguments, we will review the applicable law.

## A.   "Single Common Scheme or Plan"

Although the sentencing guidelines do not define "single common scheme or plan," we have held that "'scheme' and 'plan' are words of intention, implying that [the offenses] have been jointly planned." United States v. Ali, 951 F.2d 827, 828 (7th Cir. 1992). In other words, for purposes of sec. 4A1.2(a)(2), crimes are part of a single common scheme or plan only if: (1) they were "jointly planned"; or (2) one crime entails the commission of the other. See Joy, 192 F.3d at 771. Under this analysis, Brown must demonstrate

that "he either intended from the outset to commit [the] crimes or that he intended to commit one crime which, by necessity, involved the commission of [the others]." United States v. Carroll, 110 F.3d 457, 460 (7th Cir. 1997) (emphasis added). "Because the defendant is in the best position to know whether he jointly planned two or more crimes and is the beneficiary of any reduction in his sentence, he has the burden of showing that his prior offenses were part of a single scheme or plan." Joy, 192 F.3d at 771.

B.  Defendant Brown's Arguments

   Even though this Court has gone out of its way to define what constitutes a "single common scheme or plan," the defendant in his arguments has ignored the ruling caselaw. Specifically, Brown does not argue that he "intended from the outset" to commit the robberies or that one of the robberies necessarily involved committing the others; instead, he maintains that a similar modus operandi in each of the crimes will support a finding of relatedness. However, as we have previously and explicitly stated, "[c]rimes are not related just because they have similar modus operandi, or because they were part of a crime spree." See United States v. Sexton, 2 F.3d 218, 219 (7th Cir. 1993). Committing "like crimes that were close in time and similar in style" is not enough to establish a "singular common scheme or plan." See id./9

   The defendant also argues that these crimes were committed within a month and a half of each other and in the same general area, and were thus connected by a specific common purpose--to fund his drug addition. Crimes are not considered related under sec. 4A1.2(a)(2), however, merely because each of the offenses were committed with the same general purpose. See Carroll, 110 F.3d at 460; United States v. Brown, 962 F.2d 560, 564 (7th Cir. 1992). In fact, this Court has made clear that under sec. 4A1.2 (a)(2), crimes will not "be deemed related simply because they are committed to achieve a singular objective--such as support of a drug habit." Brown, 962 F.2d at 564; see United States v. Woods, 976 F.2d 1096, 1100 (7th Cir. 1992) (citing United States v. Rivers, 929 F.2d 136, 139-40 (4th Cir. 1991)).

   Further, despite whatever factual similarities the defendant's robberies may have, he is required to present sufficient evidence that establishes a singular common scheme or plan. We have held on several occasions that merely similar, seriatim robberies fall far short of qualifying as a "single common scheme or plan." In Sexton, we held that even a crime spree

involving four burglaries within a three-week time frame, "at the same time of day, taking the same types of property from rural residences, using the same get-away car, and with the same motive to make money," does not satisfy the relatedness standard. Sexton, 2 F.3d at 219. Likewise, we ruled in Woods that three robberies committed eight days apart, with the defendant planning to rob as many places as he could, was not the type of common scheme or plan contemplated by the guidelines. See Woods, 976 F.2d at 1099-1100. This Court similarly held in Brown that two bank robberies committed eight days apart also did not evidence a common scheme or plan. See Brown, 962 F.2d at 565.

[A] relatedness finding requires more than mere similarity of crimes. A common criminal motive or modus operandi will not cause separate crimes to be related within the meaning of the Guidelines commentary. Nor will crimes be deemed related simply because they are committed to achieve a singular objective--such as support of a drug habit or debt collection.
Brown, 962 F.2d at 564 (citations omitted).

To his detriment, Brown fails to establish, or even argue, that he intended "from the outset" to commit the March 23, April 30 and May 9 robberies, or that one of the robberies necessarily involved committing the others. Indeed, the facts and circumstances of the defendant's crimes suggest that he is a recidivist who was on a crime spree during a ten day period from April 30 through May 9 of 1998. See, e.g., Ali, 951 at 828 ("We must keep in mind the purpose of the 'related' test. It is to identify the less dangerous criminal. A criminal is not less dangerous because his crime is part of a spree."). There is no evidence that Brown either "jointly planned" the robberies, that is, intended to commit the robberies "from the outset," or that he intended to commit one of the robberies which necessarily involved committing the others. See Carroll, 110 F.3d at 460. Thus, we conclude that the defendant has not carried his burden of showing that the prior offenses were part of a "single common scheme or plan" as defined under the holdings of this Court in Joy, Carroll and Ali. See Joy, 192 F.3d at 771; Carroll, 110 F.3d at 460; Ali, 951 F.2d at 828. Accordingly, we hold that the district court did not commit clear error when it found that the defendant's March 23, April 30 and May 9, 1998 robberies were not related, and properly counted the prior convictions separately for purposes of computing Brown's criminal history. We AFFIRM.


/1 As discussed later in detail, Brown has three

Illinois state convictions for aggravated robbery as well as one Illinois conviction for armed robbery. In sum, he received a nine-year term of imprisonment on each conviction with the sentences ordered to run concurrently.

/2 Brown pled guilty in Illinois state court to one-count of aggravated robbery for each offense, which were later consolidated for purposes of sentencing only.

/3 The defendant pled guilty in Illinois state court to one-count of armed robbery.

/4 Brown pled guilty in Illinois state court to one-count of aggravated robbery.

/5 Also, at the time of his arrest, the defendant was wearing clothing and carrying a bag similar to the clothing worn and the bag carried by the LaSalle Bank bank robber.

/6 The Presentence Investigation Report does not indicate whether these two eyewitnesses were bank customers or employees, or if they could have also identified Brown by his voice.

/7 Brown also received three criminal history points for three other prior state convictions (criminal damage to property, domestic battery and battery), bringing his total criminal history points to thirteen and placing him in criminal history category VI.

/8 Neither party challenges this sentencing determination.

/9 Under Application note 9 to sec. 1B1.3, "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." As we stated in Joy, however, the "common scheme or plan" concept under sec. 1B1.3 is used for ascertaining relevant offense conduct and adjustments, and is inapplicable for purposes of our review under sec. 4A1.2(a)(2). See Joy, 192 F.3d at 771 n.7; U.S.S.G. sec. 1B1.3(b) ("Factors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines.").