**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Fred A. SKELTON, Jr., and Vickie L.**
**Duckett, Defendants–Appellants.**

Nos. 01–1762, 01–2083.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 2001.

Decided Dec. 17, 2001.

Before FLAUM, Chief Judge, BAUER, and EVANS, Circuit Judges.

## ORDER

Fred Skelton and Vickie Duckett pleaded guilty to drug offenses and now challenge their sentences on appeal. We affirm.

On December 17, 1999, police received reports that Skelton and Duckett were using Duckett's house as a methamphetamine lab. According to the reports, Skelton and Duckett provided another man, Jack Garrett, with supplies to manufacture methamphetamine. Garrett gave them a portion of the finished drug in exchange, which Skelton and Duckett then sold. Based on this information officers went to Duckett's house and received consent to search it and a truck on the property. In both the house and the truck the officers discovered methamphetamine and materials used in manufacturing methamphetamine.

Skelton and Duckett were charged and eventually pleaded guilty, but not until after the prosecution rested on the fifth day of their joint trial. Each defendant pleaded guilty to one count of conspiracy to manufacture, possess with intent to distribute, and distribute methamphetamine, 21 U.S.C. §§ 846, 841(a)(1), and one count

of possession with intent to distribute methamphetamine, *id.* § 841(a)(1).

At sentencing Skelton objected to the probation officer's recommendation that he be classified as a career offender under U.S.S.G. § 4B1.1 because within a 3–hour window on the morning of December 19, 1996, Skelton and another man burglarized two houses, one in Madison County, Illinois, and one in Jersey County, Illinois. The houses were 7 miles apart along a rural highway. That same afternoon a state trooper arrested Skelton for the burglaries. Skelton pleaded guilty to the Madison County burglary, and then was transported to Jersey County where the next day he pleaded guilty to the second burglary. Pursuant to an agreement between the counties, Skelton received concurrent sentences. The courts, however, did not issue an order of consolidation. Accepting that these cases qualified Skelton as a career offender, the district court concluded that Skelton had a Criminal History Category of VI and a total offense level of 34, yielding a sentencing range of 262–327 months. Had the court not classified Skelton as a career offender, his sentencing range would have been 120–150 months. The court sentenced Skelton to concurrent terms of 262 months incarceration.

At Duckett's sentencing the district court accepted the probation officer's assessment that she had a Criminal History Category of II and a total offense level of 26, yielding a sentencing range of 70–87 months. Duckett argued unsuccessfully that she deserved a 2–level downward adjustment for acceptance of responsibility because she had pleaded guilty and voluntarily surrendered to authorities after being released on bond. The court sentenced Duckett to concurrent terms of 70 months incarceration, 4 years of supervised release, and a $500 fine.

## DISCUSSION

### I. Skelton's Appeal

■ Skelton contends that the district court erred in classifying him as a career offender. According to Skelton, his 1996 burglaries were "related" and therefore should have counted as just one prior crime of violence, not two, under § 4B1.1. For prior convictions to be related under the guidelines, the underlying conduct must not have been separated by an intervening arrest, and the charges must result "from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2, comment. (n.3). The defendant carries the burden of demonstrating that the sentences are related, and we review a trial court's factual determination of relatedness deferentially for clear error. *See United States v. Brown*, 209 F.3d 1020, 1023 (7th Cir.2000).

■ Skelton first argues that the district court erred in deciding that his 1996 burglaries did not occur on the same occasion. The district court made an analogy to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), a provision that subjects felons possessing firearms to a mandatory minimum prison term if they have three qualifying convictions resulting from acts "committed on occasions different from one another." The district court cited a case decided under the ACCA., *United States v. Hudspeth*, 42 F.3d 1015, 1020–21 (7th Cir.1994) (en banc), in which three burglaries in 35 minutes in a strip mall occurred on separate occasions because the perpetrator had the opportunity to stop after each crime and because the crimes were carried out against different victims, at different times, and at different locations. The district court applied this rationale to the sentencing guidelines and determined that Skelton's two burglaries occurred on separate occasions, because he could have stopped after the first burglary, and he committed his crimes against different victims, at different times, and at different locations.

The analogy between the ACCA's "different occasions" and the guidelines' "same occasion" is one we have made before. *See United States v. Buford*, 201 F.3d 937, 939 (7th Cir.2000), *aff'd*, 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001); *United States v. Krzeminski*, 81 F.3d 681 (7th Cir.1996) (citing *Hudspeth* when holding that crimes committed 7 hours apart did not occur on the "same occasion"). Nonetheless, the result is troubling in Skelton's case. Although his crimes occurred on separate occasions under the ACCA definition, it seems odd for a person to be labeled a "career offender" subject to 9 additional years imprisonment when the relevant "career" consists of a single morning of crime. Nonetheless, the district court's analogy to the ACCA was consistent with our precedent and not clearly erroneous.

■ Skelton also argues that his burglaries were related because they were "functionally consolidated" at sentencing. A court may consider cases functionally consolidated, and therefore related, absent an order of consolidation where the cases "are factually or logically related, and sentencing was joint." *United States v. Best*, 250 F.3d 1084, 1095 (7th Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 279, —— L.Ed.2d —— (2001). The defendant must present, however, "a showing on the record of the sentencing hearing that the sentencing judge considered the cases sufficiently related for consolidation and effectively entered one sentence for the multiple convictions." *Id.* (quoting *United States v. Stalbaum*, 63 F.3d 537, 539 (7th Cir.1995)). Skelton did not present any evidence that the sentencing judge considered the cases to be related, and our own

review of the state court proceedings reveals no intent to consolidate. Skelton received concurrent sentences and transport between court appearances, but such administrative conveniences are not enough to show that the district court judge clearly erred in determining that the cases were unrelated. *See United States v. Russell*, 2 F.3d 200, 202–03 (7th Cir. 1993).

We have commented before that the guidelines' statement that consolidation equals relatedness may yield odd results. *See United States v. Joseph*, 50 F.3d 401, 404 (7th Cir.1995); *United States v. Woods*, 976 F.2d 1096, 1100–01 (7th Cir. 1992). For example, a criminal who commits a dozen armed robberies over the course of 2 years could save himself from "career offender" status by obtaining an order of consolidation. On the other hand, Skelton, who committed two burglaries one morning for which he received concurrent sentences, is a "career offender" because his cases were not consolidated. This disparity is inherent in the guidelines, however, and can only be rectified by Congress.

 Skelton next argues that the district court erroneously decided that his burglaries were not part of a common scheme or plan. A common scheme or plan exists only where 1) the crimes were jointly planned from the outset, or 2) one crime entails the commission of the other. *United States v. Brown*, 209 F.3d 1020, 1023 (7th Cir.2000). At sentencing Skelton argued that the first criterion applied to his burglaries. The district court, however, determined that it was quite possible that Skelton's second burglary was a crime of opportunity planned only after the success of the first burglary, and therefore found that Skelton failed to show joint planning. Skelton argues that the two crimes must have been jointly planned because the two crimes were similar and were committed on the same day, but " '[c]rimes are not related just because they have similar modus operandi, or because they were part of a crime spree.' " *Id.* at 1024 (quoting *United States v. Sexton*, 2 F.3d 218, 219 (7th Cir.1993)). The district court's decision thus was not clearly erroneous.

## II. Duckett's Appeal

 Duckett argues on appeal that the district court erred in not giving her a 2–level downward adjustment for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. Duckett believes that the district court should have awarded her acceptance points simply because she pleaded guilty— albeit not until the government rested its case on the fifth day of trial—and because she voluntarily surrendered herself to U.S. marshals after being released on bond before trial. *See* U.S.S.G. § 3E1.1, comment. (n. 1). The determination of acceptance of responsibility is a factual one and therefore is reviewable only for clear error. *See United States v. Schaefer*, 107 F.3d 1280, 1289 (7th Cir.1997). Here, Duckett admitted her conduct only well into her trial, and she voluntarily surrendered to authorities not after commission of the crime, *see* U.S.S.G. § 3E1.1, comment. (n.1(d)), but rather after being released on bond after her arrest. Accepting responsibility only after forcing the government to spend time and money on a trial rarely justifies a downward departure. *See United States v. Bonanno*, 146 F.3d 502, 512–13 (7th Cir.1998). Furthermore, the court took Duckett's guilty plea into consideration when sentencing her at the low end of the range provided by the guidelines. Given these facts, the sentencing court did not commit clear error.

## CONCLUSION

For the forgoing reasons, the judgment of the district court is AFFIRMED.