**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Jill WALLS, Defendant–Appellant.**

**No. 02–3051.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 28, 2003.

Decided Feb. 27, 2003.

Before ROVNER, EVANS, and WILLIAMS, Circuit Judges.

ORDER

After Jill Walls pleaded guilty to two counts of methamphetamine distribution, 21 U.S.C. §§ 841(a)(1), (b)(1)(C), the district court imposed concurrent 120–month prison terms based, in part, on its determi-

nation that Walls' two prior felony drug convictions qualified her as a career offender under the Sentencing Guidelines, U.S.S.G. § 4B1.1. Walls appeals, arguing that the district court erred in treating her two prior convictions as "unrelated" for purposes of § 4B1.1 because the underlying offenses were part of a common scheme and were consolidated for sentencing. We affirm.

In March 2001 drug enforcement agents suspected Walls of manufacturing and selling methamphetamine from her home in Pawnee, Illinois. Agents began watching her home, and while they were watching, she sold small amounts of methamphetamine to several police informants. A grand jury indicted Walls for methamphetamine distribution under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) for two sales involving a total of 2.7 grams. As we said, she pleaded guilty to the charges.

The presentence report recommended that Walls be sentenced as a career offender under U.S.S.G. § 4B1.1 because she had two prior felony drug offenses in Illinois state court—one in Sangamon County in May 1991 for delivering methamphetamine and one in July 1991 in neighboring Morgan County for methamphetamine trafficking.

The first conviction stemmed from Walls' sale of 2.32 grams of methamphetamine in Pawnee, Sangamon County in June 1989. Sangamon County prosecutors charged her with unlawful delivery of a controlled substance in August 1990, and the case was assigned docket number 90–CF–554. Walls pleaded guilty on May 17, 1991, and that same day a Sangamon County Circuit Court judge sentenced her to two years' imprisonment to run concurrently with any sentence imposed in the trafficking case that was then pending in Morgan County.

Walls committed the offense underlying her second drug conviction nine months later in March 1990, when she caused methamphetamine to be brought into Illinois for the purpose of delivery. A Morgan County grand jury indicted Walls for controlled substance trafficking in June 1990, and the case was docketed as 90–CF–73. In July 1991, Walls pleaded guilty and received a four-year sentence from a Morgan County Circuit Court judge.

Back to federal court, Walls objected to the PSR's recommendation that her Sangamon and Morgan County drug convictions made her a career offender. She argued, as she does here, that the convictions were "related" and therefore should only count as one prior conviction under § 4B1.1. Finding insufficient evidence of relatedness, the district court applied the career offender enhancement. Accordingly, the court concluded that Walls had a criminal history category of VI and total offense level of 34, which, after subtracting three levels for Walls' acceptance of responsibility, yielded a sentencing range of 188 to 235 months. Pursuant to the government's motion, the court granted Walls a downward departure for her cooperation, see U.S.S.G. § 5K1.1, and sentenced her to concurrent terms of 120 months' incarceration and six years' supervised release. Had the court not classified Walls as a career offender, her sentencing range would have been 21 to 27 months.

Walls' sole contention on appeal is that the district court erred in classifying her as a career offender. Walls is a career offender if (1) she's at least eighteen years old at the time she committed the instant offense, (2) the instant felony offense is either a crime of violence or a controlled substance offense, and (3) she has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1. Prior convictions qualify under subsection (3) if they would be counted separately under

U.S.S.G. § 4A1.1, the guideline concerning the computation of a defendant's criminal history category. U.S.S.G. § 4B1.2(c). "Prior sentences imposed in unrelated cases are to be counted separately" under § 4A1.1, whereas "[p]rior sentences imposed in related cases are to be treated as one sentence." U.S.S.G. § 4A1.2(a)(2). Thus, whether any two prior convictions are counted separately for purposes of the career offender guideline depends upon whether the sentences imposed would be considered "related." *United States v. Best*, 250 F.3d 1084, 1094 (7th Cir.2001). Walls bore the burden of demonstrating that her prior sentences were related, *United States v. Brown*, 209 F.3d 1020, 1023 (7th Cir.2000), and we only review a district court's factual determination of relatedness for clear error, *United States v. Buford*, 201 F.3d 937, 942 (7th Cir.2000), *aff'd*, 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001).

For prior sentences to be "related," the underlying conduct must not have been separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second), and must have resulted from offenses that "(A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2, comment. (n.3). The parties do not dispute that the offenses underlying Walls' 1991 drug convictions occurred on different dates or that there was no intervening arrest: Walls was charged with the June 1989 offense while in custody for the March 1990 offense. *See United States v. Joseph*, 50 F.3d 401, 402–03 (7th Cir.1995) (declining to treat the filing of a criminal charge as the equivalent of an arrest for purposes of § 4A1.2).

█ Walls contends that she committed the June 1989 and March 1990 methamphetamine offenses as part of a common scheme or plan, and that the cases were consolidated for sentencing. First, Walls argues that because the trafficking and the sale were committed within nine months of each other in the same general area, and both involved methamphetamine, they were connected by a common scheme to distribute the drug. Section 4A1.2 does not define "single common scheme or plan." But we have repeatedly held that "[c]ommitting like crimes that were close in time and similar in style is not enough to establish a singular common scheme or plan" for purposes of § 4A1.2(a)(2). *Brown*, 209 F.3d at 1023 (internal quotations omitted); *see also United States v. Carroll*, 110 F.3d 457, 460 (7th Cir.1997) ("Neither close temporal proximity nor similar nature of the crimes commands a finding that the defendant jointly planned the crimes."). A single common scheme or plan exists *only* if (1) the crimes were "jointly planned," or (2) "one crime entails the commission of the other." *Brown*, 209 F.3d at 1023.

Walls concedes that she fulfills neither criterion. Instead, she asserts that, contrary to our previous cases, we should employ the broader definition of "common scheme or plan" used to ascertain "relevant conduct" under U.S.S.G. § 1B1.3. For two or more offenses to constitute a "common scheme or plan" under § 1B1.3, they must be "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3, comment. (n.9(A)). If this broader definition of common scheme or plan is applied, Walls contends her two prior methamphetamine offenses were sufficiently similar and close together in time to be considered related.

Walls' argument that the term "common scheme or plan" should be defined consistently throughout the guidelines has, we

think, some logical appeal. But accepting her argument would require us to depart from the settled law of this circuit narrowly construing the term for purposes of the career offender guideline. Indeed, we have rejected the argument that the broader definition of "common scheme or plan" found in § 1B1.3 applies to a sentencing court's determination of relatedness under § 4A1.2(a)(2). *See Brown,* 209 F.3d at 1024 n. 9 (citing *United States v. Joy,* 192 F.3d 761, 771 n. 7 (7th Cir.1999) ("Despite the Guidelines' use of similar language, we have interpreted this term to mean different things in the different contexts.")). And, several of our sister circuits have agreed with our view. *See, e.g., United States v. Beckett,* 208 F.3d 140, 147 n. 2 (3d Cir.2000) (section 1B1.3 definition of common scheme or plan does not apply to § 4A1.2 because the two guidelines "take different considerations into account and have different goals"); *United States v. Berry,* 212 F.3d 391, 394 (8th Cir.2000) ("[B]road definition of 'common scheme or plan' in Application Note 9 to § 1B1.3 is not suitable in determining whether sentences are 'related' for purposes of § 4A1.2(a)(2)."). *But see United States v. LaBarbara,* 129 F.3d 81, 86 (2d Cir.1997) (no reason to conclude that "common scheme or plan" has a different meaning when used in § 1B1.3); *United States v. Breckenridge,* 93 F.3d 132, 138 (4th Cir. 1996) (applying § 1B1.3 factors to determine common scheme or plan under § 4A1.2). We decline to overrule our previous cases. Although the application of the career offender provision can lead to harsh results, and has done so here, it is a matter that the Sentencing Commission might want to address. We will stick with our interpretation of the guideline absent different directions from the Sentencing Commission.

Applying our well-settled rule, Walls must demonstrate for purposes of § 4A1.2 not only common victims, common accom-

plices, common purpose, or similar modus operandi, but that she "either intended *from the outset* to commit [the] crimes or that [she] intended to commit one crime which, *by necessity,* involved the commission of [the others]." *Brown,* 209 F.3d at 1023 (emphasis in original). Because the record is devoid of evidence establishing that Walls jointly planned the two offenses, or that one offense necessarily entailed the commission of the other, the district court did not clearly err by finding that Walls' prior drug offenses were not part of a common scheme or plan under § 4A1.2(a)(2).

■ Second, Walls argues that although the Sangamon and Morgan County cases were not formally consolidated, the two cases were "functionally consolidated" for sentencing. Where, as here, a formal consolidation order is absent, a court may consider cases functionally consolidated if the cases "are factually or logically related, and sentencing was joint." *Best,* 250 F.3d at 1095. In such cases, however, there must be "a showing on the record of the sentencing hearing that the sentencing judge considered the cases sufficiently related for consolidation and effectively entered one sentence for the multiple convictions." *Id.* Walls identifies no such showing. Rather, she relies solely on the fact that the Sangamon County Circuit Court judge imposed a two-year term to run concurrent with the sentence imposed in Morgan County. The decision to run the sentence concurrently, Walls says, *"implies* that the Sangamon County Court believed there was sufficient similarity between the two offenses." (Appellant's Br. at 16) (emphasis added).

But the imposition of concurrent sentences, without more, does not establish consolidation. *United States v. Maro,* 272 F.3d 817, 824 (7th Cir.2001) (citing *United States v. Brown,* 962 F.2d 560, 565 (7th

Cir.1992) ("Concurrent sentencing does not create related underlying offenses.")). That is particularly so when the other information in the record suggests that the cases were intended to be treated separately. The record here reveals that Walls received two separate sentences of varying lengths from two different judges in two different counties at separate sentencing hearings. Moreover, the two cases were filed under different docket numbers and retained distinct numbers after judgment and sentencing. We have held that a defendant's prior sentences were not functionally consolidated under similar circumstances. *See, e.g., Best,* 250 F.3d at 1095 (cases not consolidated where crimes occurred on separate occasions, concurrent but separate sentences were imposed, different docket numbers were retained, and there was no indication from the sentencing court that it viewed the cases to be related); *United States v. Bomski,* 125 F.3d 1115, 1119 (7th Cir.1997) (cases not consolidated where crimes occurred on different days and led to distinct judgments and sentences); *see also United States v. Lewchuk,* 958 F.2d 246, 247 (8th Cir.1992) (cases not consolidated where concurrent sentences were "imposed at different times by different courts under different docket numbers"). For these reasons, the judgment of the district court is AFFIRMED.