**UNITED STATES of America, Plaintiff,**

v.

**Steven F. GARTNER, Defendant.**

**No. 4:CR97–3070.**

United States District Court,
D. Nebraska.

May 14, 1998.

Alan Everett, Asst. U.S. Atty., Lincoln, NE, for Plaintiff.

Kirk E. Naylor, Jr., Lincoln, NE, for Defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before me to consider the motion for departure submitted by the defendant. (Filings 14 and 17). Evidence was presented at an evidentiary hearing held on May 7, 1998. I will grant the motion for departure. My reasons for doing so are set forth in this memorandum.

### I. Background

Pursuant to an agreement, the defendant entered his plea of guilty to possessing a machine gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) and making a false statement regarding the acquisition of firearms in violation 18 U.S.C. §§ 922(a)(6) and 924(a)(2). The machine gun charge related to conduct occurring in 1997, and the false statement charge related to conduct occurring in 1995. There are no unresolved objections to the presentence report (PSR).[1]

The defendant has two prior California felony convictions for "controlled substance offenses" within the meaning of U.S.S.G. § 2K2.1(a)(1). That section of the Guidelines provides that a person who unlawfully possesses a machine gun [2] and has two prior felony "controlled substance offense" convictions, starts with a base offense level of 26. *Id.* In contrast, a person who possesses a machine gun and has one prior felony conviction for a controlled substance offense starts with a base offense level of 22. U.S.S.G. § 2K2.1(a)(3).

The State of California treated these two prior convictions as if they were one. Nevertheless, for Guideline purposes, both under section 2K2.1(a)(1) and for criminal history

---

1. On May 7, 1998 and based upon evidence presented by the government, (exhibits 1 and 2), I found that the PSR correctly counted the conviction described at paragraph 34 as a controlled substance offense within the meaning of U.S.S.G. § 2K2.1(a)(1). Accordingly, I denied the defendant's objection that the offense described in paragraph 34 was not a "controlled substance offense" within the meaning section 2K2.1(a)(1).

2. *See* 26 U.S.C. § 5845(a)(6).

calculations, we have treated the California sentences as if they were unrelated. This factor, with the fact the defendant was a gun collector who checked his criminal record before engaging in the wrongful activity, that he has been gainfully employed for nearly five years, and that he has been free from crime for about seven years before this conviction, forms the basis for the motion for departure. We summarize the facts relevant to the departure request below.[3]

The instant offense began in 1995. The defendant, knowing that he was a convicted felon, acquired guns and lied on forms about his felony record to get the guns. In 1997 the defendant was found in possession of a machine gun.

Before engaging in this illegal activity, the defendant made a criminal history check of his records through the State of Nebraska. His prior felony convictions, apparently due to their age, did not show up. (Tr. 27: 11–25.) While he knew that he had been convicted of felony offenses, he did not have an evil motive in lying on the acquisition forms because the absence of his convictions on the criminal history check, with his intent to merely collect the weapons, wrongly convinced him that what he was doing was "alright." (PSR ¶¶ 14–17.)

The government concedes that the weapons the defendant obtained were for a gun collection and were not obtained for use as weapons. (Tr. 7:8–18.) In the winter, when work was slow, the defendant's hobby was collecting guns. (Tr. 28: 11–14.) In fact, the machine gun was a "World War II-type submachine gun" that the defendant put together from parts during the winter months. (Tr. 28: 11–25.)

For approximately the last seven years the defendant, who is 47 years of age, has had no criminal history except these charges. The defendant works for the City of Lincoln, Nebraska at the Parks and Recreation Department, and he has done so for more than two years. He is a custodian. His present employer states that he has done "a great

job." Before his work with the city, the defendant worked as a machine operator for about two years before he was laid off. Thus, the defendant has been gainfully employed for nearly the last five years.

The two prior felony controlled substance offense convictions are both old and unusual. When the defendant was approximately 28 years old, he got in trouble for possessing cocaine for sale. The complex facts surrounding these charges are set forth below.

On August 24, 1979, the defendant sold cocaine to an informant in San Diego during a "controlled buy." (PSR ¶ 35.) Although they could have, the police did not arrest the defendant then, and the defendant had no idea that the police had been monitoring the sale. (Tr. 22: 7–15.) On September 21, 1979, the defendant sold cocaine to an undercover police officer in Santa Ana, California and was immediately arrested. (PSR ¶ 34; Exs. 1 & 2.) On June 11, 1980. while the defendant was in jail for the Santa Ana charge, they arrested the defendant for the San Diego activity. (Tr. 22:20–23:4; PSR ¶ 35.) The defendant was not arrested earlier on the San Diego charges because the informant "had taken off." (Tr. 23:5–13.)

On December 3, 1980, the defendant pled guilty to the Santa Ana charge and on December 8, 1980 the defendant pled guilty to the San Diego charge. (PSR ¶¶ 34 and 35.) He pled guilty to the Santa Ana charge and the San Diego charge pursuant to a joint agreement with both jurisdictions; that is, he agreed to plead guilty to both charges and the authorities in both jurisdictions agreed that the sentences would be served concurrently. (Tr. 24:2–25:1.)

As agreed between the defendant and the California authorities, the courts imposed the sentences concurrently. (Id.) On January 14, 1981 the court sentenced the defendant to three years in prison on the Santa Ana charge. (PSR at ¶ 34.) On February 6, 1981, the San Diego court sentenced the defendant to two years in prison to run concurrently with the Santa Ana offense. (Id. ¶ 35.)[4]

---

3. The facts are derived from the PSR and the testimony, exhibits and statements presented at the hearing. With the agreement of the parties, I took judicial notice of the PSR.

4. Parenthetically, the last three sentences of paragraph 35 are incorrect in that they pertain to the matter discussed at paragraph 38.

The defendant served his time, and was released on both charges at the same time after serving the least amount of time permissible under California law. (Tr. 25:11–26:5.) When in prison, the defendant had no disciplinary problems and served part of his time at a minimum security camp. (Tr. 26:2–14.)

Since being released from prison in California, the defendant has not been convicted of a controlled substance offense. (PSR ¶¶ 36–39.) While the defendant has had misdemeanor convictions, he has had no other felony convictions. (*Id.*) His last misdemeanor conviction was for driving with a suspended license on May 20, 1990. (PSR ¶ 39.)

## II. Analysis

The government has submitted a "Response to Defendant's Motion for Downward Departure." In that document, the government advises that the "United States does not intend to appeal a guided downward departure of four or fewer levels resulting in a sentencing guideline range of 70–87 months or greater."[5] While I agree with the government's suggestion that a four level departure is warranted, I also think that the defendant's criminal history score overstates the significance of his criminal history.

As a result, I will depart four levels; that is, I will depart from total offense level 25 to total offense level 21. I will also depart from the otherwise applicable criminal history category; that is, I will depart from criminal history category V (11 points) to criminal history category IV (8 points). Essentially, I have treated the two California convictions as if they were one conviction for purposes of both U.S.S.G. § 2K2.1(a)(1) (offense level) and U.S.S.G. § 4A1.1(a) (criminal history). In short, I have considered the sentences imposed in the two California cases as "related" and thus I have counted them once not twice. *Cf.* U.S.S.G. § 4A1.2(a)(2) & comment. (n.3) (Related Cases).

## A. Methodology

The departure motion is predicated upon three legal grounds. The defendant relies upon U.S.S.G. § 5K2.0 (p.s.) (Grounds for Departure), U.S.S.G. § K2.11 (p.s.) (Lesser Harm), and U.S.S.G. § 4A1.3 (p.s.) (Adequacy of Criminal History).

The defendant's legal argument for departure is in turn based upon the following factual grounds: (1) we should count the California offenses once not twice for offense level purposes because they were in fact related and the Guidelines generally treat related sentences as one; (2) we should count the California offenses once not twice for criminal history purposes because they were in fact related and the Guidelines generally treat related sentences as one; (3) the fact that the defendant was a collector of guns with no intent to use them for a bad purpose, coupled with the fact that he checked his criminal history before acting and found the California convictions did not appear, that he has been gainfully employed for about five years and that he has had no criminal convictions for about seven years, added to the related nature of the California convictions, suggests more lenient treatment is warranted.

■ The Supreme Court has told us how to approach departure motions. *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (setting forth questions to be answered when a district court considers a motion for departure). A district court must answer at least four, and possibly five, questions before deciding to depart. *Id.* at 96, 116 S.Ct. 2035. Those questions are: (1) What features take the case outside the heartland? (2) Has the Commission forbidden consideration of those features? (3) Has the Commission encouraged consideration of those features? (4) Has the Commission discouraged departures based upon those features? and (5) If the factor is not mentioned at all in the Guidelines, after considering the structure and theory of both the relevant individual guidelines and the Guidelines as whole, is the factor sufficient to take the case outside the heartland? *Id.*

## B. Application of *Koon* Methodology

The defendant's offense level and criminal history score have been artificially increased. This artificial increase occurs because the

<hr>

5. The government is to be complimented for its thoughtful position.

California authorities timed his arrest in an unusual way. It is this unique factor—how the state authorities timed the defendant's arrest—which takes this case outside the heartland.

I do not find that the other features relied upon by the defendant take this case outside the heartland. The other facts (that the defendant was a collector of guns with no intent to use them for a bad purpose; that he checked his criminal history before acting and found the California convictions did not appear; that he has been gainfully employed for about five years; and that he has had no criminal convictions for about seven years) do not justify a departure.

### 1. Timing of Arrest as Reason for Departure

#### a. Does Arrest Timing Take this Case Outside the Heartland?

■ For offense level computation purposes, a person who is guilty of a crime involving possession of a machine gun and has "had at least two prior felony convictions of ... a controlled substance offense" is placed at offense level 26. U.S.S.G. § 2K2.1(a)(1). A similarly situated person with one prior felony controlled substance offense is placed at offense level 22. U.S.S.G. § 2K2.1(a)(3). Likewise, a person with two convictions involving a term of imprisonment exceeding one year and one month receives 6 criminal history points. U.S.S.G. § 4A1.1(a). Similarly, a person with one conviction to a term of imprisonment exceeding one year and one month receives 3 criminal history points rather than 6. *Id.*

If prior sentences are "related," then, though there is more than one offense, we treat the sentences as one for criminal history computation purposes. U.S.S.G. § 4A1.2(a)(2) ("Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)."). If a "controlled substance offense" is "related" to another such offense, the offense level computation procedure in section 2K2.1 treats the offenses as one (just like we would treat such offenses for criminal history purposes). U.S.S.G. § 2K2.1 comment. (n.5) ("For purposes of determining the number of such convictions under subsection[ ] (a)(1) ..., count any prior conviction that receives any points under § 4A1.1 (Criminal History Category).")

The two California convictions are not "related" given the definition of "related cases" employed by the Guidelines. "Prior sentences are not considered related if they were for offenses *that were separated by an intervening arrest.*" U.S.S.G. § 4A1.2 comment. (n.3) (emphasis added). *Accord, United States v. Aguilera,* 48 F.3d 327, 330 (8th Cir.) *cert. denied,* 516 U.S. 837, 116 S.Ct. 117, 133 L.Ed.2d 67 (1995) (same). Here, the California police arrested the defendant on the second offense before they arrested him on the first offense; that is, the California authorities arrested the defendant at different times although they could have arrested the defendant on both offenses at the same time.

Had the defendant been arrested for both offenses at the same time,[6] there would have been "no intervening arrest" and the cases would have been treated as "related" under the Guidelines. U.S.S.G. § 4A1.2 comment. (n.3) provides, in pertinent part, that "prior sentences are considered related if they resulted from offenses that ... were part of a single common scheme or plan." The similarity of the crimes (sales of cocaine to government informants or agents), the nearness in time of the crimes (August 24 and September 21), the close geographic proximity of the sales,[7] and the fact that the Santa Ana and San Diego authorities entered into one plea agreement providing for concurrent sentences, proves that the defendant's drug sales were a "part of a single common scheme or plan." In fact, the government

---

6. Had the defendant been promptly arrested for the first offense, it is doubtful the second offense would have taken place. This is because it is probable that he would have been held in jail as he was on the second offense for which he was first arrested.

7. San Diego and Santa Ana are located in Southern California about 92 miles from one another. *See* Rand McNally, *Road Atlas,* at 99 (1959).

concedes that considering these two offenses "as one offense for purposes of offense level calculations" is proper. (Tr. 37: 17–19.) [8]

Consequently, the defendant's offense level and criminal history score have been artificially increased under the Guidelines because the California authorities timed his arrests in an unusual manner. Emphasizing that the California authorities elected not to promptly arrest the defendant on the first offense is important. The San Diego police elected not to make a prompt arrest because an informant was not available to testify against the defendant until June of 1980. (Tr. 23: 1–22.) Thus, the defendant was not responsible for the delay.

It is this unique factor—how the state authorities timed the defendant's arrest—which takes this case outside the heartland. The Commission did not consider that state authorities could artificially cause "related offenses" under the Guidelines to become "unrelated" offenses by the manner in which the state authorities timed an arrest. *See* U.S.S.G. § 4A1.2 comment. (n.3) (discussing meaning of "related cases" but omitting any reference to a situation where local authorities artificially time arrest).

#### b. Is Arrest Timing Forbidden as a Departure Reason?

The Commission has not forbidden consideration of arrest timing regarding "related offenses" for purposes of departure under the Guidelines. *Compare* U.S.S.G. § 4A1.2 comment. (n.3) (Related Cases) *with* U.S.S.G. § 5K2.0 (p.s.) (Grounds for Departure) and U.S.S.G. § 4A1.3 (p.s.) (Adequacy of Criminal History). *See also* U.S.S.G. § 5H1.10 (providing that race, sex, national origin, creed, religion, and socio-economic status are not relevant in the determination of a sentence.)

#### c. Is Arrest Timing Encouraged as a Departure Reason?

The Commission has not encouraged consideration of arrest timing as a departure factor. *Compare* U.S.S.G. § 4A1.2 comment. (n.3) (Related Cases) *with* U.S.S.G. § 5K2.0 (p.s.) (Grounds for Departure) and U.S.S.G. § 4A1.3 (p.s.) (Adequacy of Criminal History). However, the Commission has recognized that departures are warranted when the defendant's criminal history score over represents the seriousness of the defendant's criminal history. U.S.S.G. § 4A1.3 (p.s.) (Adequacy of Criminal History).

#### d. Is Arrest Timing Discouraged as a Departure Reason?

The Commission has not discouraged consideration of arrest timing as departure factor. *Compare* U.S.S.G. § 4A1.2 comment. (n.3) (Related Cases) *with* U.S.S.G. § 5K2.0 (p.s.) (Grounds for Departure) and U.S.S.G. § 4A1.3 (p.s.) (Adequacy of Criminal History).

#### e. Is Arrest Timing Sufficient to Take the Case Outside Heartland?

From the words of the Guidelines, one can plainly see that the Commission intentionally treated "related cases" as one offense for offense level computation purposes under U.S.S.G. § 2K2.1 comment. (n.5) and criminal history computation purposes under U.S.S.G. § 4A1.2(a)(2). It is equally evident from the structure and theory of the Guidelines that the Commission believed that "related offenses" suggest a lesser propensity to commit future crime than do multiple separate offenses. *Compare,* U.S.S.G. Ch. 4, Pt. A intro. comment. ("General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence.... Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation") *with* U.S.S.G. § 4A1.2(a)(2) ("Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)").

I have carefully considered the words, the structure and the theory of the Guidelines recognizing that the Guidelines do not mention arrest timing as a basis for departure. In particular, I am fully aware that departures in cases like this one should be " 'highly

---

8. Moreover, while the government does not agree that the California offenses should be treated as one for criminal history purposes, the government, through its able lawyer, concedes that "[t]here is a certain logic" to such an extension. (Tr. 37:21–38:19.)

infrequent.' " *Koon,* 518 U.S. at 96, 116 S.Ct. 2035 (citing 1995 USSG ch. 1, pt. A.) Having said that, I nevertheless find and conclude that the timing of an arrest by state authorities, which results in the artificial inflation of the offense level and the criminal history score, is a proper basis for departure. Two portions of the Guidelines authorize such a departure.

Departure is justified under section 5K2.O (p.s.) (Grounds For Departure). The artificial inflation of offense level and criminal history caused by the way in which the police timed an arrest is " 'a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " *Id.* (quoting 18 U.S.C. § 3553(b)). Moreover, because the timing of the arrest here artificially increases not only the offense level but also the criminal history, departure is also justified under section 4A1.3 (p.s.) ("The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category ..., and therefore consider a downward departure from the guidelines.").

### f. Extent of Departure

We should treat the defendant for departure purposes as if his California sentences were related under the Guidelines. Thus, the defendant is entitled to a departure of 4 levels for offense computation purposes. U.S.S.G. § 2K2.1(a)(3). Similarly, a person with one conviction to a term of imprisonment exceeding one year and one month receives 3 criminal history points. U.S.S.G. § 4A1.1(a). The result of such a departure is to reduce the total offense level by 4 points to level 21 (from level 25) and the criminal history to 8 points (from 11 points) or category IV (from category V). The defendant is then subject to a range of imprisonment under the Guidelines of 57 to 71 months and this range is down from 100 to 125 months before departure.

### 2. Miscellaneous Reasons for Departure

The other reasons asserted by the defendant do not justify a departure. Because those reasons clearly do not warrant a depar-

ture, my explanation for refusing a departure on those grounds can be brief. To avoid any confusion, I recognize that I have the power to depart but I choose not to do so.

■ First, the defendant argues that he was only a collector of guns with no evil motive to use the weapons and therefore the "lesser harm" provisions of the Guidelines ought to be applied for a departure. *See* U.S.S.G. § 5K2.11. I assume the defendant's underlying factual arguments are true; that is, I assume that he was a collector with no evil motive to use the weapons.

Nevertheless, I am not persuaded that a "gun collector" departure is warranted. The Guidelines provide for a reduction in the base offense level for certain crimes involving gun collections. U.S.S.G. 2K2.1(b)(2). However, the Guidelines make clear that no such reduction should take place if, as here, the defendant is subject to the enhancement provisions of 2K2.1(a)(1) or (a)(3) relating to machine guns and one or more prior felony controlled substance offenses. *Id.* The Guidelines state: "If the defendant, *other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4) or (a)(5),* possessed ... firearms solely for ... collection, and did not unlawfully discharge or otherwise unlawfully use such firearms ..., decrease the offense level determined above to level 6." *Id.* (emphasis added).

Accordingly, I conclude that a "collector" departure has been discouraged by the Commission in cases like this one. Therefore, I elect not to depart.

■ Second, the defendant argues that he checked his criminal history and when the California convictions did not appear he concluded that it was "alright" to lie on the forms. Simply put, this factor is not a mitigating factor.

■ Third, the defendant argues that he has been gainfully employed for about five years and that he has had no criminal history for about seven years. Employment is not ordinarily relevant as a reason for departure. U.S.S.G. § 5H1.5. While criminal history is relevant in determining the appropriate sentence, U.S.S.G. § 5H1.8, the absence of re-

cent criminal history was effectively considered when we computed the criminal history score. Thus, these factors are not normally appropriate grounds for departure. Moreover, neither employment nor lack of recent criminal history is present to an unusual degree here sufficient to justify a departure.

Accordingly,

IT IS ORDERED:

1. The motion for departure (filings 14 and 17) is granted in part and denied in part as provided in this memorandum and order.

2. The court will depart to level 21, criminal history category IV.

3. Sentencing is set for 12:30 p.m. June 4, 1998.