**UNITED STATES of America,
Plaintiff,**

v.

**Thomas A. ROSCHE, Defendant.**

**No. 02–CR–80.**

United States District Court,
E.D. Wisconsin.

Dec. 24, 2002.

Gail J. Hoffman, for Plaintiff or Petitioner.

Brian P. Mullins, for Defendant or Respondent.

### *DECISION AND ORDER*

ADELMAN, District Judge.

## I. FACTS AND BACKGROUND

Defendant Thomas Rosche pled guilty to a charge of social security fraud. Defendant was the representative payee on his elderly and incompetent mother's social security checks. However, rather than using the money—some $13,576.00—for her benefit, he converted it to his own use. He also defrauded his mother out of an additional $345,016.02 by raiding three trust accounts held for her benefit and altering the title to a property she owned.

A pre-sentence report (PSR) was prepared, which computed defendant's offense level as 19 and his criminal history category as IV. Defendant challenges the latter determination, arguing that two convictions counted separately in his criminal history score were "related" and thus should be counted only once. Defendant also moves for a downward departure based on his medical condition. Prior to the sentencing hearing, I also advised the parties that I was considering a departure from defendant's criminal history category. I now address these issues.

## II. DISCUSSION

### A. "Related" Convictions

Defendant argues that two of his prior convictions are "related" under U.S.S.G. § 4A1.2(a)(2) and may not be counted separately.[1] If one is discounted, his criminal history category drops from IV to III, and his imprisonment range under the sentencing guidelines from 46–57 months to 37–46 months.

Section 4A1.2(a)(2) states:

Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c). Use the longest sentence of imprisonment if concurrent sentences were imposed and the aggregate sentence of imprisonment imposed in the case of consecutive sentences.

Application note 3 defines the term "related cases."

Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

The first conviction at issue in the present case was for issuance of a worthless check in State of Wisconsin (Dodge Coun-

---

1. Defendant's criminal history score included a felony theft conviction (two points) and three issuance of worthless check convictions (one point each), with a two point enhancement under § 4A1.1(d) because he committed the instant offense while on probation, for a total of seven points.

ty) Case No. 01–CF–206. On September 12, 2000, defendant issued a check in the amount of $1900 to Neosho Truck Parts International knowing that he had insufficient funds in his account to cover it. Defendant was represented by Attorney Jeremy Przybyla, and pled no contest on June 19, 2002, receiving a sentence of three years probation.

The second conviction at issue was also for issuance of a worthless check in State of Wisconsin (Dodge County) Case No. 01–CM–458. On December 30, 2000, defendant issued a check in the amount of $950 to Neosho Truck Parts International knowing that it would bounce. He was again represented by Attorney Pryzbyla, entered a plea of no contest on June 19, 2002, and was sentenced to three years probation concurrent with Case No. 01–CF–206.

Both charges were issued on the same date. They were not separated by an intervening arrest. Therefore, they could be considered related if covered by one of the three bases in the application note.

### 1. "Occurred on the Same Occasion"

■ In construing this phrase, the Seventh Circuit focuses on temporal proximity but does not require that the offenses have been committed simultaneously or be related evidentially. *See United States v. Connor*, 950 F.2d 1267, 1270 (7th Cir.1991). The *Connor* court rejected the government's contention that the convictions must be "so totally factually related and inextricably intertwined as to make the acts involved one." *Id.* (internal quote marks omitted).

[C]ourts which have mentioned the "single occasion" requirement have referred to it in terms of time.... The Sentencing Commission apparently intended a broad reading of "related cases." The guidelines commentary includes any offenses that are consolidated for trial or sentencing in its definition of "related cases." We would have very odd results if only "inextricably intertwined" cases could be deemed to occur on a single occasion and thereby be related cases, but cases that were reasonably consolidated for trial—although the offenses neither occurred at the same time nor were inextricably intertwined—were related cases. Such a system would suggest that those, like Connor, who committed crimes subject to different jurisdictions deserve a different punishment from those who commit crimes within the same jurisdiction. Courts have clearly rejected such an approach.

*Id.* at 1270–71 (internal citations omitted).

■ In *United States v. Moreno–Arredondo*, 255 F.3d 198, 205 (5th Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 491, 151 L.Ed.2d 403 (2001) the court stated that "most opinions on the subject emphasize the temporal aspect and rely only to a lesser degree on the geographical or spatial aspect." The court held that the two convictions at issue there were related when they involved violations of the same statute and occurred at the same location within minutes of each other, albeit with different victims. *Id.* at 205.

In sum, the pertinent case law ... makes clear that simultaneity might support relatedness but that its absence is anything but fatal. The same is true for multiple victims. Neither simultaneity nor plurality of victims is an essential element of sameness by any stretch. It follows that as neither is a prerequisite for finding sameness, sequential commissions of offenses affecting different victims can comprise a single occurrence: Only the extent of the temporal separation between commissions can be controlling for purposes of the same-

occurrence prong, and even then such separation must be viewed in light of other factors such as spatial separation, identity or non-identity of offenses, and the like. In addition to applying the primary yardstick of temporal separation in light of all pertinent circumstances, it must be applied with a healthy serving of common sense. Ultimately, the greater the common-sense differences in the other, non-temporal aspects of the facts and circumstances, the shorter the temporal attenuation needed to eschew sameness of occurrence.

*Id.* at 207.

In the present case, the first offense was committed on September 19, 2000 and the second on December 30, 2000. Thus, the primary factor of temporal proximity clearly precludes a finding of relatedness. Even though the convictions were identical in type (issuance of a worthless check) and the victim (Neosho Truck Parts International) was the same in both, finding that offenses committed months apart occurred "on the same occasion" would not comport with common sense. Accordingly, they are not related under this prong.

### 2. "Single Common Scheme or Plan"

■ The Seventh Circuit has held that "offenses are considered part of a 'common scheme or plan' only if the defendant can prove that he either 'jointly planned' the crimes or planned one crime that 'would entail the commission of the other as well.'" *United States v. Carroll,* 110 F.3d 457, 460 (7th Cir.1997) (quoting *United States v. Ali,* 951 F.2d 827, 828 (7th Cir.1992)); *see also United States v. Brown,* 209 F.3d 1020, 1023 (7th Cir.2000). "Crimes are not related for purposes of this provision simply because they have a similar modus operandi," *United States v. Joy,* 192 F.3d 761, 771 (7th Cir.1999) (citing *United States v. Sexton,* 2 F.3d 218, 219 (7th Cir.1993), and "[n]either close temporal proximity nor the similar nature of two crimes requires a finding that the offenses were part of a common scheme." *Id.* (citing *Carroll,* 110 F.3d at 460; *United States v. Woods,* 976 F.2d 1096, 1098, 1099 (7th Cir.1992) (three robberies committed eight days apart were not related because mere repetition of similar conduct is not sufficient to show a common scheme)). However, "whether the same victim is targeted can be persuasive circumstantial evidence of joint planning." *Carroll,* 110 F.3d at 460. The defendant "has the burden of showing that his prior offenses were part of a single scheme or plan." *Joy,* 192 F.3d at 771.[2]

In the present case, there is no evidence that the two offenses were jointly planned

---

**2.** Not all courts agree with the Seventh Circuit in its interpretation of this provision. For example, the Eleventh Circuit applies the same test used to determine "relevant conduct" in calculating the offense level. "Convictions are part of a common scheme if 'substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purposes, or similar modus operandi.'" *United States v. Mullens,* 65 F.3d 1560, 1565 (11th Cir.1995) (quoting U.S.S.G. § 1B1.3 cmt. n. 9); *see also United States v. LaBarbara,* 129 F.3d 81, 86 (2d Cir.1997) ("[T]he relevant test [under § 4A1.2] involve[s] the existence of a 'common scheme or plan,' and there is no reason to conclude that that term has a different meaning when used in Section 1B1.3."); *United States v. Breckenridge,* 93 F.3d 132, 139 (4th Cir.1996) (holding that phrase "common scheme or plan" should be given same construction in § 1B1.3 and § 4A1.2). See *United States v. Carter,* 283 F.3d 755, 758–61 (6th Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 286, —— L.Ed.2d —— (2002) for a discussion of the difficulties in interpreting § 4A1.2(a)(2) and the circuit split it has engendered. The Seventh Circuit has not explained why the phrase should be interpreted broadly when setting the offense level but narrowly when considering criminal history.

(as opposed to merely being repeated), and commission of one did not necessarily entail commission of the second. Thus, under the Seventh Circuit's test, they are not related under this prong.[3]

### 3. "Consolidated for Trial or Sentencing"

 There is no indication in the record that these two convictions were formally consolidated for trial or sentencing (although, under Wis. Stat. § 971.12(1), they surely could have been). However, the Seventh Circuit has recognized that cases may be "functionally" consolidated even absent a formal order. This occurs when the cases "are factually or logically related, and sentencing was joint." *United States v. Buford,* 201 F.3d 937, 940 (7th Cir.2000), *aff'd,* 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001); *see also United States v. Joseph,* 50 F.3d 401, 403–04 (7th Cir.1995).

> However, joint sentencing for administrative convenience is not "consolidation for sentencing" under Application Note 3 to § 4A1.2, and the mere fact that a defendant was sentenced for multiple offenses on the same day does not establish that his sentences were consolidated rather than merely disposed of simultaneously for the sake of convenience. Therefore, in the absence of a formal order of consolidation, we will deem sentences functionally consolidated only where there is a showing on the record of the sentencing hearing that the sen-

tencing judge considered the cases sufficiently related for consolidation and effectively entered one sentence for the multiple convictions.

*United States v. Best,* 250 F.3d 1084, 1095 (7th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 279, 151 L.Ed.2d 205 (2001) (citations and internal quote marks omitted); *see also United States v. Russell,* 2 F.3d 200, 204 (7th Cir.1993) ("[I]t would seem that the purpose of the guideline would best be implemented by requiring either a formal order of consolidation or a record that shows the sentencing court considered the cases sufficiently related for consolidation and effectively entered one sentence for the multiple convictions.").

I conclude that these two cases were functionally consolidated because they are factually and logically related, and sentencing was joint. First, the cases are factually and logically related because they are of the same type, committed against the same victim, within a short period of time, and in the same geographic area. Second, the sentencing transcript reveals that the judge effectively entered one sentence on both cases.[4] Therefore, I find that these two convictions are "related" under § 4A1.2, and defendant's criminal history category is III rather than IV.

### B. Downward Departure

The court may "depart from the applicable Guideline range if 'the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not

---

**3.** I note, however, that these offenses were of identical type (issuance of a worthless check), committed against the same victim, in a relatively short period time, in close geographic proximity, and were likely "solved" during the course of the same criminal investigation. Thus, under the alternate test employed by several of the courts of appeal, *see, e.g., Breckenridge,* 93 F.3d at 137, they could be considered related.

**4.** The judge stated: "And I will follow the recommendation. On each count, sentence will be withheld, you'll be placed on probation for a period of three years. Conditions will be that you shall have no contact with Linda Roth, with her residence, her business premises, Neosho Truck Parts, or members of her immediate family. You shall pay Linda Roth or Neosho Truck Parts restitution in the amount of $3,146.31." (6/19/02 Tr. at 8.)

adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *Koon v. United States,* 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (quoting 18 U.S.C. § 3553(b)). The Commission has provided guidance in making departure decisions by listing certain factors that are "forbidden" bases for departure, "encouraged" bases for departure, and "discouraged" bases for departure. *Id.* at 93–95, 116 S.Ct. 2035

 The Supreme Court has thus adopted the following test for determining whether to depart: (1) What factors of the case make it special or unusual? (2) Has the Commission forbidden departures based on those factors? (3) If not, has the Commission encouraged departures based on those factors? (4) If not, has the Commission discouraged departures based on those factors? *Id.* at 95, 116 S.Ct. 2035.

If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland.

*Id.* at 95–96, 116 S.Ct. 2035 (citations and internal quote marks omitted).

### 1. Extraordinary Medical Condition

 Defendant asks me to depart downward from the applicable sentencing range because he suffers from a serious medical condition. Section 5H1.4 of the guidelines discusses this basis for departure, stating:

Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

 Under *Koon*'s nomenclature, this is a "disfavored" basis for departure. Thus, the Seventh Circuit has held that in order to grant a downward departure due to physical disability, "the district court ... 'must ascertain, through competent medical testimony, that the defendant needs constant medical care, or that the care he does need will not be available to him should he be incarcerated.'" *United States v. Albarran,* 233 F.3d 972, 979 (7th Cir.2000) (quoting *United States v. Sherman,* 53 F.3d 782, 787 (7th Cir.1995)). The defendant must present independent medical testimony concerning his condition in order to meet his burden of showing that a departure is appropriate. *See United States v. Crickon,* 240 F.3d 652, 656 (7th Cir.2001). The district court must then make particularized findings, based on its review of the medical evidence, supporting the conclusion that the defendant suffers from an extraordinary medical condition justifying a departure. *See United States v. Gee,* 226 F.3d 885, 902 (7th Cir.2000); *Sherman,* 53 F.3d at 786.

Defendant indicates that he suffers from arterial veinous malformation, which causes intra-cranial bleeding, severe headaches and seizures. He presents various medical records concerning his condition. The most recent, a June 28, 1996 letter from Dr. Glenn Meyer, confirms the diagnosis and indicates that defendant suffered a major bleeding episode on May 30, 1990. The letter states that defendant did very well thereafter but had a sudden, severe headache about three weeks previously. A CT scan revealed no bleeding, and defendant essentially returned to normal. On examination Dr. Meyer found defendant's condition to be normal, concluding: "Mr. Rosche has recovered from his recent episode which is probably not a bleed. We recommend only continued careful monitoring with blood pressure evaluation . . . ."

Defendant next presents a March 25, 1991 office note from Dr. Meyer, which indicates that defendant "has now returned to essentially normal life except for diminished energy levels." A January 14, 1991 note from Dr. Meyer indicates that defendant had not been feeling well and that a CT scan was ordered to rule out rehemorrhage. Finally, defendant submits the hospital records from his initial bleeding episode, which are dated May 30, 1990.

The PSR indicates that defendant suffered intra-cranial bleeding in 1990 in response to an arterial veinous malformation. He was hospitalized on May 30, 1990 and prescribed Dilantin and Decadron, which reduced the swelling in the brain and the headaches from which he had been suffering. He was discharged on June 6, 1990 and referred for possible surgery, which he declined to have. He continues to take Dilantin because he suffered a seizure in 1991, and the medication acts as an inhibitor.

Neither the medical records nor the PSR indicate that defendant's condition is currently severe or life threatening, requires constant medical attention, or that the Bureau of Prisons will be unable to provide the care he does need. Defendant has provided no medical evidence more recent than 1996, disabling me from determining his condition today. Therefore, although I am authorized to depart on the basis suggested by defendant, I decline to do so here.

## 2. Criminal History Category

 Prior to the date of sentencing, defendant had not provided me with a copy of the transcript of the relevant proceedings in Dodge County. Therefore, I was unable to determine whether the cases had been "functionally consolidated" by the state court judge. I advised the parties that I was considering a downward departure based on the fortuitous increase in defendant's criminal history category caused by the fact that these two prior convictions were not formally joined, as they could have been under Wis. Stat. § 971.12(1). I conclude that it would be appropriate to depart from criminal history category IV to category III under the circumstances present here.

The Commission has authorized departures from a defendant's criminal history category if the category significantly under- or over-represents the seriousness of the defendant's record or the likelihood that he will commit further crimes. U.S.S.G. § 4A1.3. The guideline provides as an example of a proper downward departure a situation where the defendant had two minor misdemeanor convictions close to ten years prior to commission of the instant offense and no contacts in the intervening period. In that situation, the court could conclude that the defendant's criminal history was significantly less seri-

ous than that of most defendants in criminal history category II. *Id.*

In the present case, defendant has four prior convictions, all in a cluster in 2000 and 2001. All were economic crimes, as is the instant offense. Therefore, the type of departure mentioned in the commentary to § 4A1.3 does not fit these facts.

■ However, as indicated, the fact that defendant's two Dodge County worthless check convictions were not formally consolidated resulted in the PSR's increasing his criminal history category from III to IV. The court is authorized to depart when, "even though the guideline linguistically applies," *United States v. Jaderany,* 221 F.3d 989, 995 (7th Cir.2000), *cert. denied,* 531 U.S. 1151, 121 S.Ct. 1095, 148 L.Ed.2d 968 (2001), the situation at hand is not what was contemplated by the Commission in setting the applicable sentence. In other words, when a mechanical application of the guidelines would frustrate the purpose of the provision, the court should depart to effectuate the Commission's intent.

The courts have long struggled to define what the Commission meant by "related" cases in § 4A1.2(a)(2). *See Carter,* 283 F.3d at 758–61; *United States v. Stalbaum,* 63 F.3d 537, 539 (7th Cir.1995). As discussed, the application note provides that in three situations convictions should be considered related and counted but once: (1) when they occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing. These provisions should be analyzed in light of the purposes of chapter 4 of the guidelines—to impose harsher sentences on those with a record of prior criminal behavior, general deter-

rence of criminal conduct, and protection of the public from those with a likelihood of recidivism. *See United States Sentencing Commission Guidelines Manual* Chapter 4 at 317 (2002) (introductory commentary).

The first two prongs of the application note serve this purpose because a defendant who commits two prior offenses "on the same occasion" or as part of a "common scheme or plan" could be said to have had but one lapse in judgment or deviation from an otherwise law abiding life that caused commission of both crimes. Such a person is less culpable and less likely to repeat his crimes than someone who on separate and independent occasions decided to break the law. The purposes of the guidelines are thus served by counting both convictions as one.

It is less clear how the third prong of the application note serves these purposes. Offenses consolidated *for trial* will necessarily be related to the extent required to support joinder. Rule 8(a) of the Federal Rules of Criminal Procedure allows joinder where offenses are (1) of the same or similar character, (2) based on the same act or transaction, or (3) based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Similarly, Wis. Stat. § 971.12(1) provides that two or more crimes may be joined if they "are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan." The requirements for joinder thus largely mirror the first two prongs of the relatedness test in application note 3.[5]

---

5. It remains unclear why offenses of the same or similar type, unconnected by any evidentiary overlap, should be joined. *See generally*

*United States v. Kaquatosh,* 227 F.Supp.2d 1045, 1047–48 (E.D.Wis.2002). But that issue is not present here.

But what of consolidation for sentencing only?

[T]here is a significant distinction between consolidation for sentencing of otherwise unrelated offenses, usually in the context of a guilty plea, and consolidation for trial, which assumes the offenses have some relationship to each other. This critical difference is, however, ignored in U.S.S.G. § 4A1.2(a)(2), which treats as related all offenses which are consolidated for sentencing as well as trial, but treats as unrelated those offenses which were charged and sentenced separately, regardless of the relationship among the offenses.

*Carter*, 283 F.3d at 759 (internal citations omitted).

As the *Carter* court lamented, the guidelines' goal of reasonably uniformity is frustrated when a federal sentence is determined in part based on the fortuity of whether a consolidation form was signed in a state court[6] many years previously. *See id.* at 761. The Commission has not addressed this issue except to say that an *upward* departure may be warranted when a defendant receives a single set of points for several convictions consolidated for sentencing, U.S.S.G. § 4A1.2 cmt. n. 3, and to provide for a one point addition for a crime of violence that would otherwise not be counted because it was related to another sentence, U.S.S.G. § 4A1.1(f). But this does nothing for the defendant whose sentence is fortuitously *increased* by the failure of the state court to consolidate offenses that should have been joined. The problem is particularly acute in those circuits, such as the Seventh, which adhere to a narrow definition of "common scheme or plan." District courts in these circuits are often unable to mitigate some of the unfairness and disparity resulting from the failure to consolidate by considering the offenses "related" under this prong of the application note.[7] *See generally Carter,* 283 F.3d at 758–60.

In situations where the defendant is tagged with multiple criminal history points based on convictions that could have been joined and thus counted only once, the court must have the discretion to depart downward. Otherwise, the overarching goal of the guidelines—to promote reasonable uniformity in sentencing—will be frustrated.

In the present case, the two convictions at issue were of precisely the same type, were committed against the same victim within about three months of each other, and were charged in the same Wisconsin county on the same day. They easily could have been joined under Wis. Stat. § 971.12(1). The fact that they were not led to a fortuitous increase in defendant's criminal history category as set by the

---

6. Or whether the state judge made a record sufficient to support "functional consolidation." It appears that the Seventh Circuit's adoption of this doctrine was in part to temper the arbitrariness that would result if only formal consolidation counted. However, when the defendant cannot satisfy this standard because the record from the state court will not support it, the district court should, for reasons to follow, have the discretion to depart downward to achieve the same result.

7. Even though after reviewing the transcript of the Dodge County sentencing hearing I was able to conclude that the cases were functionally consolidated here, this too seems somewhat fortuitous. The sentence imposed by a federal court should not be controlled by the phrasing (likely accidental) of a busy state court judge taking perhaps his or her tenth plea of the morning call. Judges do not choose their words at sentencing with the defendant's future "criminal history" in mind. Because the issue is not being considered by the state judge, the phraseology employed should not later be binding on a federal court.

PSR; a downward departure is the appropriate remedy.

In *United States v. Casiano*, No. 98–CR–1316, 2001 WL 93666, 2001 U.S. Dist. LEXIS 892 (S.D.N.Y. Feb. 2, 2000), Judge Sweet departed on somewhat similar grounds. The defendant there had his criminal history category increased from I to II based on the inclusion in his criminal history score of a prior conviction that Judge Sweet concluded was "related" to the instant offense.[8] Judge Sweet noted the Commission's intent that "related" cases not be considered in computing the criminal history category and thus departed downward from category II to category I. *Id.* at *2–3, 2001 U.S. Dist. LEXIS 892 *7–9.

Similarly, in *United States v. Gartner*, 5 F.Supp.2d 1060, 1066 (D.Neb.1998), Judge Kopf departed from category V to IV based on his determination that two cases similar in type, time, and geography, and for which concurrent sentences were imposed, should not both be counted in the criminal history score. "The artificial inflation of ... criminal history caused by the way in which" state authorities handled the matters was "a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." *Id.* (internal quote marks and citation omitted).

Therefore, I am authorized to depart. However, before deciding whether to depart I always consider the factors set forth in 18 U.S.C. § 3553(a): (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide for the defendant's rehabilitative needs; (3) the kinds of sentences available; (4) any pertinent policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to the victims of the offense.

This offense, while a serious one reflecting a deplorable lack of concern and respect for the victim, defendant's own mother, was non-violent and not drug-related. Moreover, defendant is receiving enhancements for abuse of a position of trust under U.S.S.G. § 3B1.3 and commission of a crime against a vulnerable victim under § 3A1.1, which will appropriately account for society's disapproval of defendant's conduct. Finally, reducing defendant's criminal history category by one still leaves him facing more than three years in prison, sufficient to provide just punishment, promote respect for the law, and deter others.

Defendant has a prior record, but it is interesting to note that all of his convictions were accumulated after he had reached age fifty, and all were economic crimes of a type ordinarily committed by those in dire financial straights.

I also note that the "Sentencing Commission apparently intended a broad reading of [the term] 'related cases.'" *Connor*, 950 F.2d at 1271. This departure comports with that intent. The departure also advances the goal of reducing unwarranted sentencing disparity. Two defendants with the same criminal history should not

---

8. It is unclear whether this conviction could have been excluded under U.S.S.G. § 4A1.2 cmt. n. 1, which directs that sentences for conduct that is part of the instant offense are not to be counted.

receive different sentences based on the fortuitous joinder decision of a state court. The departure thus comports with the purposes of sentencing.

The Commission has indicated that departures based on criminal history should be made horizontally on the sentencing table by placing the defendant in the criminal history category that appropriately reflects the seriousness of his prior criminal conduct. *See* U.S.S.G. § 4A1.3; *see also United States v. Taylor*, 88 F.3d 938, 947 (11th Cir.1996) (discussing the distinction between horizontal departures based on criminal history and vertical departures based on offense conduct).[9] In this case, had the two prior convictions at issue been formally consolidated, defendant would have been in criminal history category III (absent any consideration of "functional" consolidation). Therefore, as an alternate basis for my finding that defendant's criminal history category should be III, I find that a departure would be appropriate.

### III. CONCLUSION

The defendant will be sentenced to 44 months imprisonment. His conduct in this case was shameful, and a sentence at the upper end of the guideline range is called for. Other conditions of the sentence appear in the judgment.

However, despite my strong disapproval of defendant's conduct, the guidelines must be applied to him in a logical and even-handed way. By finding that his criminal history category is III, by functional consolidation or a downward departure, I attempt to promote reasonable uniformity in

sentences among similarly situated defendants. By sentencing defendant toward the upper end of the range, I express society's disapproval of his actions. His request for a further departure based on his medical condition is denied.

**IT IS SO ORDERED**

---

**9.** I note that at least one court has departed vertically based on its finding that the inclusion of a "related" conviction in the criminal history score resulted in an overstatement of the seriousness of the defendant's criminal history. *United States v. Evans*, No. 97–3527, 1999 WL 552608, *1, 1999 U.S.App. LEXIS 17962, at *3–5 (6th Cir.1999 July 26, 1999) (affirming downward departure of one offense level to compensate for overstatement of criminal history). In this case, however, a horizontal departure seems more appropriate and in keeping with U.S.S.G. § 4A1.3.